# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JACK K. HOLDREN, | : | Case No. 3:11-cv-437 |
| Plaintiff, | : | District Judge Walter H. Rice<br>Magistrate Judge Michael J. Newman |
| vs. | : | |
| COMMISSIONER OF<br>SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | | |

## REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE REVERSED; (2) THIS CASE BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g) and §1383(c). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff Jack Holdren not "disabled" within the meaning of the Social Security Act and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").

This case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the Commissioner's Memorandum in Opposition (doc. 11), the administrative record[2] (doc. 6), and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I. BACKGROUND

## A. Procedural History

Plaintiff filed applications for DIB and SSI in March 2007, asserting that he has been under a "disability" since February 28, 2005.[3] *See* PageID 210-20. Plaintiff claims he is disabled due to chronic obstructive pulmonary disease ("COPD"), depression and lower back problems. PageID 268.

Following initial administrative denials of his applications, Plaintiff received a hearing on December 11, 2009 before ALJ Barbara Beran. *See* PageID 80-121. On May 7, 2010, ALJ Beran issued a written decision, concluding that Plaintiff could perform a limited range of light work and was therefore not "disabled." PageID 55-61.

Specifically, the ALJ's Findings of Fact and Conclusions of Law, which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.

2. The claimant has not engaged in substantial gainful activity since February 28, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: degenerative disc disease of the lumbar spine at the L5-S1 levels, chronic obstructive pulmonary disease, hyperlipidemia, gastroesophageal reflux disease, depression, anxiety and a personality* disorder (20 CFR 404.1520 (c) and 416.920(c)).

   *[Footnote in decision] Note, however, consistent with the State agency's findings (citing to PageID 523-36), the evidence is insufficient to determine the presence and severity of any psychiatric impairment prior to

---

[3]Plaintiff had previously applied for DIB and SSI in March 2005 -- alleging disability beginning June 2004 and December 2003 respectively -- but these applications were denied at the initial stage, and Plaintiff did not appeal either adverse decision. *See* PageID 201-09, 264.

March 1, 2007. While the claimant had a hospitalization for suicide ideation in June 2004 (citing to *Id.* at PageID 374-92) (prior to his alleged onset date of disability in this case), he was given a GAF[4] of 55 at discharge. By May 2005, he had a GAF of 70 with an assessment by a psychological consultant of no severe mental impairment (citing to *Id.* at PageID 405-07). Consistent with this, when seen by a treating physician from September 2004 through October 3, 2005, there were no complaints or diagnosis of any mental impairment, and the claimant reported not feeling depressed (citing to *Id.* at PageID 427-37).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. Based [upon a] careful consideration of the entire record, the following residual functional capacity ["RFC"] has been established: the claimant can perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit, stand and walk for six without limitation. He cannot climb ladders, ropes or scaffolding. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He should avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases or poor ventilation. He has no other physical limitations. Mentally, the claimant is limited to low stress work, which, in his case, is defined as simple tasks in a non-public, non-crowded work environment without high levels of interpersonal interaction or a fast pace.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 7, 1962, has been a younger individual at all times relevant to this decision (date (20 CFR 404.1563 and 416.963).

---

[4]"GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r*, 61 F.App'x 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. A GAF of 51-60 indicates "moderate symptoms OR any moderate difficulty in social, occupational, or school functioning." *Id.*; *accord Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997) ("moderate difficulty" does not rise to the level of disability).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 57-73.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 48-51. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this timely appeal on December 14, 2011. Doc. 1.

**B. Plaintiff's Hearing Testimony**

At the administrative hearing, Plaintiff testified that his primary problems are with his breathing, and that his breathing difficulties have gotten progressively worse over the years. PageID 98. He experiences shortness of breath walking up and down stairs, and walking at the grocery store. PageID 99. He also experiences difficulty breathing in hot, cold, and humid conditions. PageID 100. Plaintiff testified that he quit smoking in June 2008, but his breathing issues are still the same. *Id*.

Plaintiff also testified that he has suffered from depression since he was a child. PageID 101. He felt it was difficult to be at the hearing and testify. *Id.* Plaintiff is on medication for his depression, and testified that the medication helps his condition somewhat. PageID 101-02. He stated that his depression would not interfere with his ability to work. PageID 102.

Plaintiff estimated that he can stand for approximately twenty minutes. PageID 104-05. He has no problem sitting, but cannot lift more than ten or fifteen pounds. PageID 105. He does his own laundry and dishes occasionally. PageID 106. He also prepares his own meals and makes his bed. *Id.*

Plaintiff testified that he goes grocery shopping occasionally, but does no outdoor yard work. PageID 107. He testified that does not go to the movies or to restaurants because he does not like to be in crowded places. *Id.* Plaintiff used to ride his bike and go bowling, but has not been able to do those activities for the three years prior to the hearing. PageID 109. He stated that he occasionally helps his nieces and nephews with their homework, but does not attend any of their school functions or athletic events. *Id.*

When asked if he thought he could perform sedentary work, Plaintiff responded that some mornings "my lungs will just be almost collapsed, and I have to take a bunch of breathing treatments." PageID 109-10. With respect to his lung condition, Plaintiff noted that he would "hate to get a job and then lose a job because I can't go to work." PageID 110. Plaintiff testified that he uses his nebulizer four times a day, for fifteen minutes at a time. *Id.*

Plaintiff also testified that since his alleged onset date, he tried working for his brother as a plumber's helper. PageID 91-92. He was "let go" due to his shortness of breath and inability to work in cold or hot weather. PageID 92-94.

### C. Vocational Expert Testimony

Michael Klein, Ph.D., a vocational expert ("VE"), also testified at the hearing. PageID 113-20. Based on Plaintiff's RFC, age, education, and work experience, the VE testified that Plaintiff could not perform his past relevant work, but would be able to perform approximately 20,000 light, unskilled jobs and 10,000 unskilled sedentary jobs in the regional economy. PageID 117-18. Specifically, the VE testified that Plaintiff would be able to perform unskilled sedentary jobs including sorter, packer, order clerk, and surveillance system monitor. PageID 118.

On cross-examination, the VE acknowledged that if Plaintiff needed to use a nebulizer four times during the workday, it would preclude any work, unless there were special accommodations from Plaintiff's employer. PageID 119. The VE additionally testified that even if Plaintiff had to use a nebulizer just twice a day or "on demand," it would nevertheless require a special accommodation from Plaintiff's employer. PageID 120. The VE, however, did not provide any testimony addressing whether there were jobs in the national economy which would tolerate such an accommodation -- *i.e.* the use of a nebulizer two (and perhaps more times as needed on-demand) per day while at work and during work hours. The VE stated that anything greater than one day per month of sick leave would preclude competitive employment for unskilled positions. *Id.*

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on appeal is to determine: (1) whether the ALJ's non-disability finding is supported by substantial evidence; and (2) whether the ALJ employed the correct legal

criteria. 42 U.S.C. §§ 405(g), 1383(c)(3)[5]; *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found a claimant disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

**B.     "Disability" Defined**

To be eligible for DIB and/or SSI benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from: (1) performing his or her past job; and (2) engaging in "substantial gainful activity" that is available in the regional or national

---

[5] The remaining citations will identify the pertinent DIB regulations with full knowledge

economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. OPINION AND ANALYSIS

Plaintiff's medical history has been adequately summarized in the parties' briefs, *see* doc. 8-1 at PageID 687-90 and doc. 6-2 at PageID 58-61, and the Court will not fully repeat it here. Where applicable, the Court will identify the medical evidence relevant to its decision.

---

of the corresponding SSI regulations.

Plaintiff asserts two assignments of error. Doc. 8-1 at PageID 693-95. First, Plaintiff argues that the ALJ erred by not finding that his COPD functionally met or equaled Listing 3.02A. *Id*. Second, Plaintiff challenges the ALJ's findings at Step Five regarding Plaintiff's employability given the limitations imposed by his impairments. *Id*.

A. **Substantial Evidence Supports the ALJ's Finding that Plaintiff Did Not Meet or Equal Listing 3.02A**

Listing 3.02A involves evaluation of the results of spirometric testing of COPD. Under this Listing, if a claimant is diagnosed with COPD due to any cause, they will be disabled if they have an $FEV_1$ (forced expiratory volume at one second) equal to or less than the values specified in Table I corresponding to the person's height without shoes. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 3.02A, Table I. Plaintiff is 70 inches tall, which means he must have an $FEV_1$ value equaling or less than 1.55 liters to meet the Listing. *Id*.

Plaintiff readily acknowledges that he did not have the sufficient $FEV_1$ values equaling or less than 1.55 liters to meet the Listing. Doc. 8-1 at PageID 694. Rather, Plaintiff argues the ALJ erred in finding that the combination of his impairments did not equal Listing 3.02A. *Id*. at PageID 694-95.

In support of his argument, Plaintiff makes no citations to the record other than pointing to the report of consultative examiner Martin Fritzhand, M.D., who opined that Plaintiff "appears incapable of performing even a mild amount of sitting, ambulating, standing, bending, pushing, pulling, lifting, and carrying heavy objects." *Id*. at PageID 693 (citing PageID 547). Moreover, Plaintiff summarily argues that his "combination of impairments, including his multiple emergency room visits and hospitalizations for breathing difficulties, set forth a condition which

is 'at least equal in severity and duration to the listed impairments most like the claimed impairment,' that is COPD, under Listing 3.02A." Doc. 8-1 at PageID 695.

Contrary evidence, however, does not invalidate an ALJ's determination of non-disability so long as the ALJ's determination is supported by substantial evidence. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Moreover, the Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record, if other substantial evidence supports the ALJ's findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Here, substantial evidence supports the ALJ's determination at Step Three of her analysis that Plaintiff did not meet or functionally equal Listing 3.02A. The ALJ considered all sections of Listing 3.00 for respiratory impairments, and found that none were met or equaled, whether Plaintiff's impairments were considered alone or in combination. PageID 62. In addition, the ALJ aptly noted that "[t]here is no medical opinion of record to indicate the existence of an impairment or combination of impairments that meet or equal in severity the level of the Listings of Impairments." *Id*.

Regarding Plaintiff's numerous hospitalizations, the ALJ found that those hospitalizations were often "due to non-compliance with his medications (either by not taking them or running out of his medication)." *Id*. A review of Plaintiff's respiratory-related hospitalization records confirms the ALJ's finding that most coincided with Plaintiff's non-compliance with his medication. *See* PageID 409, 420, 460, 475, 605, 610. In addition, the ALJ also noted Plaintiff's non-compliance with his doctor's recommendations to quit smoking through at least June 2008. PageID 62. The record reflects that Plaintiff was smoking two packs

per day through mid-2005, *see* PageID 545, and a half-pack per day through June 2008. PageID 87, 104.

The ALJ properly considered the opinion of Dr. Fritzhand, and gave it "slight weight" to the extent Dr. Fritzhand found Plaintiff unable to lift or carry heavy objects. PageID 67. As to the remainder of the opinion, however, the ALJ gave it no weight[6] on the grounds it is "unsupported by and inconsistent with the medical evidence of record, including [Dr. Fritzhand's] own findings on physical examination." *Id.*

The ALJ reasonably relied on the opinion of state agency physician Arthur Sagone, M.D., who reported that Plaintiff's impairment did not meet or equal a listed impairment. *See* PageID 66. In July 2007, Dr. Sagone completed a physical RFC assessment form, concluding Plaintiff is capable of performing light work. PageID 557. Dr. Sagone also opined that Plaintiff could not climb ladders, ropes and scaffolds and only occasionally perform postural activities. PageID 558. He further opined that Plaintiff should avoid concentrated exposure to extreme cold and respiratory irritants, such as fumes, odors, dusts, and gases. PageID 560. Dr. Sagone specifically noted that Plaintiff had been admitted to the hospital for shortness of breath after he had not taken his inhalers and respiratory medication. PageID 557-58. Dr. Sagone also reported that, at the time of the consultative examination with Dr. Fritzhand in May 2007, Plaintiff's physical examination was entirely within normal limits and his respiratory rate was unlabored. *Id.*

In September 2007, another state agency doctor, Walter Holbrook, M.D., reviewed Plaintiff's records and affirmed Dr. Sagone's findings. PageID 583. Although additional

---

[6] Notably, at the time Dr. Fritzhand conducted his May 2007 consultative examination,

evidence was submitted after Dr. Sagone reviewed the record, his review satisfied the requirement to receive expert opinion evidence regarding the issue of equivalency. *See* Social Security Ruling (SSR) 96-6p (ALJ must obtain an updated medical opinion in two circumstances: if he/she believes the medical findings in the record suggest a judgment of equivalence might be reasonable; or, when additional medical evidence is received that in the opinion of the ALJ may change the state agency consultant's finding that the impairment was not equivalent to a listed impairment). For instance, as the ALJ noted, when Plaintiff sought emergency room treatment during the year prior to the hearing, although there was wheezing, the medical records noted that Plaintiff "does not appear acutely ill or toxic or that his respiration is labored or more than mildly labored." PageID 71 (citing PageID 635-38, 667-68, 672).

In addition, the ALJ reasonably found the large gaps of time between Plaintiff's physician visits, and the type of treatment prescribed whenever he was treated for his breathing difficulties, to be "inconsistent with the type of treatment ordinarily expected to be seen in the case of a disabling impairment." PageID 68. Specifically, Plaintiff did not see his regular family physician between January and August 2008, or between August 2008 and June 2009. *Id*. (citing PageID 584, 624, 652). Also, the ALJ reasonably concluded that Plaintiff's subjective allegations of pain and degree of functional limitations were unsupported by the objective medical evidence of record. PageID 68.

Moreover, Plaintiff's cursory argument -- that the ALJ erred by not soliciting the testimony of a medical expert -- is similarly unavailing, as it is within the ALJ's discretion to look at the complete record and determine whether a medical expert is necessary. *See Simpson*

---

Plaintiff was still smoking one-half pack of cigarettes daily. *See* PageID 87, 104.

*v. Comm'r of Soc. Sec.*, 344 F.App'x 181, 189 (6th Cir. 2009). The ALJ committed no error here by not calling a medical expert in this case.

Based upon the foregoing, the Court finds the ALJ's analysis regarding Listing 3.02A is supported by substantial evidence, and Plaintiff's assignment of error as to this Listing is without merit. *See Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts").

> B.  **The ALJ's Finding at Step Five of the Sequential Evaluation is Not Supported by Substantial Evidence**

In this case, the ALJ determined that Plaintiff successfully moved through the first four Steps of the sequential evaluation process, but, based on the testimony of the VE, denied Plaintiff's claim at Step Five. PageID 72-73. Plaintiff's challenge to the ALJ's Step Five analysis is well-taken, and is grounds for reversal.

As discussed *supra*, if a claimant proves eligibility under the first four Steps, the burden shifts to the Commissioner at Step Five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Jones*, 336 F.3d at 474. "[T]he Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). In order for VE testimony in response to hypothetical questions to assist the Commissioner in carrying his burden at Step Five of the sequential evaluation, those hypotheticals must "accurately portray" the claimant's physical and mental impairments. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Here, Plaintiff testified that he generally uses his nebulizer four times per day (first thing in the morning; 11 a.m.; 3 p.m.; and before he goes to bed) for fifteen minutes at a time, and acknowledged that at least two uses would need to occur at work if he were working a 9 a.m. to 5 p.m. shift. PageID 119-20. The VE testified that, without a special accommodation to permit scheduled and on-demand nebulizer usages, Plaintiff would be precluded from any work. *Id*. However, in his decision, the ALJ's analysis at Step Five failed to address whether a significant number of jobs in the national economy still exist if special accommodations were made to allow Plaintiff to use his nebulizer at least twice during an 8-hour shift, for up to fifteen minutes per use, and on-demand if needed. As such, Court finds that the testimony of the VE is insufficient to carry the Commissioner's burden at Step Five, as the ALJ's conclusion at that Step is unsupported by substantial evidence. Accordingly, the Commissioner's decision should be reversed, and this case remanded so the ALJ can take additional VE testimony and resolve this factual issue. *See Beauregard v. Comm'r of Soc. Sec.*, No. 3:07cv1740, 2009 U.S. Dist. LEXIS 30349, at *3 (N.D. Ohio Apr. 7, 2009) (reversing the Commissioner's non-disability finding where the claimant testified she must use a nebulizer 4-6 times per day, each for fifteen minutes, and the ALJ "failed to discuss the nebulizer altogether"); *Quibell v. Comm'r of Soc. Sec.*, No. 00-10427-BC, 2004 U.S. Dist. LEXIS 16623, at *10-11 (E.D. Mich. July 14, 2004) (finding the ALJ's non-disability conclusion unsupported by substantial evidence where the ALJ failed to consider the claimant's need to take on-demand nebulizer treatments when necessary).

## IV. RECOMMENDATION

For the foregoing reasons, Plaintiff's second assignment of error is well taken. The Court finds that, as more fully explained above, the ALJ's decision is unsupported by substantial evidence, and recommends that it be reversed. Further, because factual issues remain in this case,[7] *see supra*, the Court recommends that this matter be remanded to the Commissioner of Social Security under the fourth sentence of 42 U.S.C. § 405(g). *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 173-76 (6th Cir.1994).

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED;**

2. This matter be **REMANDED** to the Commissioner under the fourth sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

November 26, 2012　　　　　　　　　　　　　　　　　　　s/Michael J. Newman
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[7] Accordingly, this is not a case for which an award of benefits is appropriate at this time by the District Court. *See Faucher v. Sec'y of Heath & Human Servs.*, 17 F.3d 171, 176 (6th Cir 1994) (clarifying that benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits").

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).